William **DAUBERT** and Joyce Daubert, individually and as, Plaintiffs,

v.

**MERRELL DOW PHARMACEUTICAL, INC., et al., Defendants.**

**Civ. No. 84–2013–G(IEG).**

United States District Court, S.D. California.

Feb. 8, 1989.

Mary F. Gillick, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for William Daubert.

George E. Berry, Santa Monica, Cal., for defendants.

MEMORANDUM DECISION
AND ORDER

GILLIAM, District Judge.

Defendant Merrell Dow Pharmaceutical's motion for summary adjudication came on for hearing November 21, 1988, before the Honorable Earl B. Gilliam. Plaintiff, William Daubert, was represented by Mary F. Gillick. Defendants, Merrell Dow Pharmaceutical and Dow Chemical Company, were represented by George E. Berry. At the conclusion of the hearing, the court reserved its ruling and informed the parties that it would issue a written opinion. Having considered the points and authorities and oral argument of counsel, the court issues this memorandum decision denying defendant's motion for summary adjudication.

. . . . .

## FACTS

This case involves personal injuries sustained by plaintiff Jason Daubert. The injuries allegedly were caused by the drug Bendectin.

On or about December 7, 1971, plaintiff Joyce Daubert was informed she was pregnant. Her obstetrician/gynecologist prescribed Bendectin to treat the nausea and vomiting associated with her pregnancy. She also received Bendectin from her family doctor on or about November 11–18, 1972. At the time Mrs. Daubert first ingested Bendectin, she was approximately 34–41 days into her pregnancy. This is precisely within the period conceded by Merrell Dow Pharmaceuticals, Inc. ("Merrell Dow") as the time when the limb buds in the embryo commence formation.

Mrs. Daubert gave birth to plaintiff Jason Daubert on July 26, 1973. Jason was born with a limb-reduction defect of his arm and hand.

On December 22, 1983, plaintiffs sued Merrell Dow and Dow Chemical alleging strict liability, breach of warranty and negligence. On November 21, 1988, defendants brought a motion to dismiss plaintiff Jessica Daubert and defendant Dow Chemical Co. The court granted the motion to dismiss both parties, but allowed leave to properly file against Dow Chemical. Also on that day, defendants brought a motion to strike portions of plaintiff's complaint. The court granted the motion but gave leave to amend.

Defendant now moves for summary adjudication on the issues of strict liability and breach of warranty.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that the court shall render a summary judgment if the papers submitted "show (1) that there is no genuine issue as to any material fact, and (2) that the moving party is entitled to a judgment as a matter of law." The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir.1985). The burden then shifts to the nonmoving party to demonstrate the existence of specific facts showing that there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Defendant contends plaintiffs may not maintain a cause of action for strict liability in a pharmaceutical products liability case. Defendant cites *Brown v. Superior Court*, 44 Cal.3d 1049, 245 Cal.Rptr. 412, 751 P.2d 470 (1988) for the holding "that a manufacturer is not strictly liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution." Defendants claimed the *Brown* court said Restatement of Torts § 3402(a) comment K is the appropriate test to be applied in drug manufacturing cases alleging strict liability.

Plaintiffs counter this argument by using the language in *Brown* to hold drug manufacturers strictly liable for injuries caused by an ill-prepared drug unaccompanied by warnings of its dangerous propensities that were either known or reasonably knowable to the manufacturer. Plaintiffs point to the fact that as early as November 1962, defendants began receiving information suggesting a relationship between Bendectin and limb defects. By September 1973, defendants received notice of the 96 cases of congenital malformations occurring in association with the use of Bendectin. Although defendants conducted two tests on the effects of Bendectin, plaintiffs claim these tests were self-serving and worthless. The first test, hereinafter referred to as the "Staples/Carl" test, was an animal study. The rats and rabbits were given up to 60 times the usual dose of Bendectin. The rats produced no offspring with malformations, but the rabbits demonstrated a teratogenic potential for Bendectin. Plaintiffs contend the Staples/Carl results showed a significant relationship be-

tween Bendectin and congenital malformations, yet they were never reported to company officials, the Food and Drug Administration or the public.

The second test, hereinafter referred to as the "Bunde–Bowles" study, measured the effects of Bendectin on humans. Patients given Bendectin during their first trimester of pregnancy were to be compared with patients in a control group who were to give birth within the same period of time. Plaintiffs claim the study was plagued with unscientific procedures and inaccuracies: such as patients were administered Bendectin, yet the data used in the study claimed they received none, and patients were documented as receiving Bendectin but they received the drug when exposure was irrelevant. The result of the Bunde–Bowles study was there was no relationship between Bendectin and congenital malformations. Plaintiffs contend that if these studies were properly conducted and the true findings researched more thoroughly, defendants would have known of the relationship between Bendectin and congenital deformities. The Staples/Carl test gave defendants knowledge or at least a basis to inquire further. By not following up on the Staples/Carl test, and alerting the public, doctors and the Food and Drug Administration (FDA) of the findings, defendants failed to adequately warn of the foreseeable dangers associated with Bendectin.

The basis for a ruling in favor of granting summary judgment is that there are no genuine issues of material fact. In the case at hand, an essential element of finding that strict liability should not apply is that the "drug was properly prepared and accompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution." *Brown*, at 1069, 245 Cal. Rptr. 412, 751 P.2d 470. Defendants contend they tested the drug and found no correlation between Bendectin and congenital malformations. Plaintiffs refute this position by claiming the true test results showed a correlation. This is an issue of fact that must be determined by the trier-of-fact; thus, summary judgment on the issue of strict liability is denied.

Due to the court's finding that there exists a genuine issue of material fact on plaintiff's strict liability claim, defendant's motion for summary judgment on the express and implied warranties is also denied. If defendants had reason to know that their warnings or warranties were false, then plaintiffs may maintain an action for breach of those warranties.

 Based on the above, the court holds that drug manufacturers may be held strictly liable for failure to warn of known or reasonably knowable side effects. Thus, it is for the trier-of-fact to determine if the drug manufacturer possessed such knowledge or not. Therefore, defendants' motion for summary judgment is denied.

IT IS SO ORDERED.